UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shaden Barakat, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| Office Superstore East, LLC aka Staples, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

Plaintiff Shaden Barakat, by and through her counsel, O'Connor | O'Connor, P.C., hereby brings this Complaint against Defendant Office Superstore East LLC, also known as Staples, and alleges as follows:

**NATURE OF ACTION**

Plaintiff Shaden Barakat ("Plaintiff" or "Barakat") brings this action to redress Defendant Office Superstore East LLC ("Defendant" or "Staples")' retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA").

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 and 1377 and supplemental jurisdiction over Plaintiff's state claim pursuant to 28 U.S.C. § 1322 and 1367.

2. Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the claims alleged herein occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

3. Plaintiff is a 33-year-old Arab Middle Eastern female.

4. Plaintiff worked at Staples from March 30, 2009, until August 25, 2022, when she was terminated. At the time of her termination, Plaintiff was the General Manager at Staples' Vernon Hills location.

5. In early August 2022, Staples hired an employee named Felipe Vasquez-Reyna ("Felipe") to work at the Vernon Hills store location.

6. On August 12, 2022, Felipe texted Plaintiff "You're a super mom☺" to which she responded with "lol thanks dude" because she did not know how to respond to such a message.

7. Then Felipe texted Plaintiff again and said, "I hope one day I find a baby mama so invested in her kids like you" From that point Plaintiff began to feel uneasy and uncomfortable.

8. After about an hour Plaintiff received another text from Felipe that says, "I think I might have a crush on you." Plaintiff responded with "I am married, and I am your boss."

9. On that day, Felipe's inappropriate comments and behaviors persisted. He repeatedly referred to Plaintiff as beautiful and also stated, "I love you, you're beautiful."

10. Plaintiff told Felipe, "Felipe, you need to stop right now. This is inappropriate. You need to focus on your work. Go back to the register immediately." Felipe appeared taken aback and embarrassed, repeatedly apologizing as he returned to the register.

11. After her shift was over on that day, Plaintiff left work and went to the airport to pick up her mother-in-law. Felipe continued to text Plaintiff even after she left the store. One of his texts said "I wish you can sit on my face" Plaintiff texted him back saying "inappropriate."

12. Around 5 p.m. on August 12, 2022, while Plaintiff was still at the airport, Chad Grayckowski, who was Tech Supervisor and Closing Manager on duty called Plaintiff to report that Felipe put his hands around Daniel Polkowski's (part-time tech associate) neck and tried to choke him.

13. Plaintiff talked to Polkowski on the phone and asked if he was okay. He told Plaintiff that he was okay and there were no injuries to report. Plaintiff asked Polkowski if he wanted to call the Police and press charges and he said "no".

14. Then Plaintiff told Felipe on the phone that his conduct violated Staples' policy and that he needed to go home immediately and not return to work until further notice.

15. Plaintiff informed Chad Grayckowski that she would have to contact HR to report this incident upon her return on August 15, 2022, because HR is closed on weekends.

16. Around 8 p.m., Grayckowski called Plaintiff again to report that Felipe was sleeping on the breakroom table and would not listen to his direction to leave. At this point, Plaintiff called Felipe and told him we would call the police unless he left the building right away.

17. Felipe called Plaintiff four times in a matter of minutes at 10 p.m. When Plaintiff answered the phone, he was incoherent and said he just wanted to talk, if Plaintiff and he could hang out, and how beautiful she was.

18. Plaintiff told Felipe to stop calling and hung up. However, Felipe called Plaintiff four more times afterward.

19. Plaintiff was not scheduled to work on August 13 and 14, 2022.

20. On August 15, 2022, the Plaintiff returned to work and engaged in discussions with Dan Polkowski, Chad Grayckowski, Jake Long, and Nikki Mendoza, all of whom were present when Felipe placed his hands on Polkowski on August 12,

2022. Plaintiff conducted interviews with these employees to collect additional information and obtain statements regarding the incident.

21. During these conversations, Plaintiff discovered that another female employee, Nikki Mendoza, had also experienced sexual harassment from Felipe. Mendoza informed the Plaintiff that Felipe had approached her from behind while she was at the register and made inappropriate comments, saying, "damn baby." Mendoza expressed that Felipe's behavior was unsettling and made her feel uncomfortable.

22. Based on the information gathered from the employees, Plaintiff made the decision to terminate Felipe's employment and subsequently called Felipe with Chad Grayckowski to communicate this decision.

23. After that, Plaintiff called Stefanie Roberts, Senior HR Rep, to report the incident. Roberts did not answer, and Plaintiff left a voicemail reporting Felipe's sexual harassment toward Nikki Mendoza and her and violence toward Dan Polkowski.

24. Roberts responded to Plaintiff on August 17, 2022, which was two days after the report of sexual harassment and workplace violence.

25. Roberts told Plaintiff that she should have reported the incident to Ethics Point. Roberts said that Workplace Violence ("WPV") calls need to be made directly to Ethics Point and that there is a 24-hour response team for WPV specifically to address them immediately.

26. This was the first time Plaintiff heard of Ethics Point.

27. While Chad Grayckowski, Dan Polkowski and Plaintiff submitted statements as to what happened on August 12, 2022 to HR, no one was interviewed by HR. HR further declined to accept statements from Jake Long, who witnessed Felipe's attack, or Nikki Mendoza, who was also sexually harassed by Felipe.

28. On August 25, 2022, Plaintiff's Market Manager, Scott Marcks, came into her office and called the District HR Rep and put her on the speaker.

29. Then Marcks pulled out a document and started to read "Following an internal investigation, it was determined that Shaden has been negligent in their duties of a General Manager including but not limited to, reporting active violations of Sexual Harassment, Substance Abuse, and Workplace Violence in a timely or appropriate manner. The failure to appropriately act put yourself and your associates at further risk. As a result, Staples has lost faith in your ability to manage and lead. Your employment will be terminated effective immediately."

30. After the HR Rep hung up, Marcks told Plaintiff that "You can file for unemployment, and you can get a lawyer".

31. The store employees reacted strongly to Plaintiff's termination, expressing their dissatisfaction, and they chose to leave the store alongside Plaintiff and resign from their positions.

32. During this time, Dan Polkowski conveyed to Marcks, "You're terminating her [Plaintiff], and it's a mistake. She was sexually harassed by the individual who assaulted me, and no one even considered contacting or discussing it with me."

33. Later that evening, the store staff, including Plaintiff, collectively sent an email to Sarah Goggin, the head of HR, highlighting the absence of a proper investigation into the sexual harassment and workplace violence complaints, as well as the wrongful termination of Plaintiff's employment.

34. Goggin then assigned one of her senior reps to contact all the store associates who emailed her.

35. However, HR provided varying explanations for Plaintiff's termination to the store associates, suggesting that there were additional undisclosed reasons for her termination beyond what was stated in Plaintiff's termination letter.

36. Staples did not fire the General Manager and Sales Manager at the Highland Park location the incidents of an associate who came to work regularly under the influence.

## --COUNT I --
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

37. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

38. Plaintiff engaged in protected activity by reporting sexual harassment that her employee and she had been subject to at their workplace.

39. Following Plaintiff's complaints, Defendant terminated Plaintiff designed to punish her for her complaints of sexual harassment.

40. Other similarly situated managers who did not engage in protected activity were treated more favorably by Defendant.

41. As a consequence of Defendant's unlawful conduct, Plaintiff suffered severe emotional distress and lost wages.

42. As a result of Defendant's wrongful and retaliatory termination, Plaintiff has suffered economic and non-economic damages in the form of, inter alia, lost wages, lost benefits, out-of-pocket costs, hardship, inconvenience, other economic damages, as well as non-economic damages such as humiliation, loss of self-esteem and self-respect, and emotional distress.

**WHEREFORE,** Plaintiff Shaden Barakat, respectfully seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under Title VII

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory and punitive damages in an amount to be determined at trial;

d. An award of the costs of this action and reasonable attorney's fees; and

e. Such other and further relief as this Court may deem just and equitable.

## --COUNT II --
**Retaliation in Violation of the Illinois Human Rights Act**

43. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

44. Plaintiff engaged in protected activity by reporting sexual harassment that her employee and she had been subject to at their workplace.

45. Following Plaintiff's complaints, Defendant terminated Plaintiff designed to punish her for her complaints of sexual harassment.

46. Other similarly situated managers who did not engage in protected activity were treated more favorably by Defendant.

47. As a consequence of Defendant's unlawful conduct, Plaintiff suffered severe emotional distress and lost wages.

48. As a result of Defendant's wrongful and retaliatory termination, Plaintiff has suffered economic and non-economic damages in the form of, inter alia, lost wages, lost benefits, out-of-pocket costs, hardship, inconvenience, other economic damages, as well as non-economic damages such as humiliation, loss of self-esteem and self-respect, and emotional distress.

**WHEREFORE,** Plaintiff Shaden Barakat, respectfully seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the Illinois Human Rights Act;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

    c. An award of compensatory damages in an amount to be determined at trial;

    d. An award of the costs of this action and reasonable attorney's fees; and

    e. Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

                                          Respectfully Submitted,
                                          Shaden Barakat
                                          By: /s/ Heewon O'Connor.
                                          One of Plaintiff's Attorneys

Heewon O'Connor
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste 212
Elmhurst, IL 60126
Tel. 630-903-6397
Fax. 630-658-0336
heewon@oconnor-oconnor.com